# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

LEAH K. LEIB,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

    Defendant.

Case No. 11-CV-350-FHM

## OPINION AND ORDER

Plaintiff, Leah K. Leib, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's September 5, 2008, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held May 24, 2010. By decision dated June 25, 2010, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on March 31, 2011. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff was 42 years old on the alleged date of onset and 45 on the date of the ALJ's denial decision. She has a high school education and formerly worked as cafeteria worker, house cleaner, and head waitress. She claims to have been unable to work since May 26, 2007 as a result of Raynoud's, mild degenerative disc disease, elbow pain, and depression.

## **The ALJ's Decision**

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to occasionally lift and/or carry 10 pounds, frequently lift and/or carry up to 10 pounds, stand or walk at least 2 hours in an 8-hour workday, sit for at least 6 hours in an 8-hour workday, all with normal breaks, no constant use of the hands for such repetitive tasks as keyboarding, and she is limited to simple repetitive tasks having no more than incidental contact with the public. [R. 15]. Although Plaintiff was unable to return to her past relevant work with these limitations, based on the testimony of a vocational expert the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff

2

could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## **Plaintiff's Allegations**

Plaintiff asserts that the ALJ: failed to properly consider the medical source opinions; failed to perform a proper step five determination; and failed to perform a proper credibility analysis.

## **Analysis**

### Consideration of Medical Source Opinions

Plaintiff claims that her treating physician prescribed gloves to ameliorate the symptoms of her Raynaud's. Plaintiff points to several instances in her medical records where it was noted that she was wearing gloves. [Dkt. 13, p. 2]. She argues the ALJ's decision should be reversed because "[t]he treating physician's opinion about the necessity for gloves not weighed[.]" [Dkt. 13, p. 3].

On November 20, 2008, in addition to noting that Plaintiff was having a decrease in her symptoms on her current medication and that the medication would be continued, the physician suggested "cold prevention [with] gloves." [R. 277]. On September 30, 2009, a different physician noted Plaintiff's remark that because of increasing pain due to the onset of colder weather she started using gloves and increased her medication. [R. 409]. On January 10, 2010, another physician noted that Plaintiff was wearing gloves on both hands and that her fingers were warm and pink with good capillary refill. [R. 360, 362]. There are many medical record entries where there is no mention of gloves. The court

3

finds that, contrary to Plaintiff's contention that the entries mentioning gloves are opinions that must be weighed, most of the entries are merely observations that Plaintiff was wearing gloves. The physician's suggestion, "cold prevention [with] gloves," [R. 277], is not a treating physician's opinion on the issue of the nature and severity of an impairment and therefore does not meet the definition of an opinion that must be weighed. 20 C.F.R. § 404.1527(d)(2), §416.927(d)(2). In any event, the ALJ noted Plaintiff's testimony that she wears gloves 95% of the time as well as the evidence of grip strength, and objective evidence of her abilities. [R. 16].

Plaintiff also asserts that the ALJ's decision should be reversed because "the divergent opinions of the reviewing experts was [sic] never rectified." [Dkt. 13, p. 3]. Plaintiff does not explain what is meant by this assertion. A clue as to what Plaintiff might mean is found in Plaintiff's Reply Brief where Plaintiff asserts that the Commissioner's response "ignored that the ALJ failed to state why he rejected the specific limitation of limited ability to feel imposed by his own reviewers." [Dkt. 15, p. 1]. The ALJ's decision reveals that he considered the evidence as a whole in formulating the RFC. The ALJ stated that given the objective medical evidence in the record the RFC finding was reasonable. [R. 17]. The ALJ noted specific findings related to Plaintiff's hands disclosed by examinations and testing. [R. 16]. The court finds that the ALJ adequately explained that he relied on the actual examinations and testing to formulate the RFC.

Plaintiff makes a passing reference to the reviewer's opinion that she should avoid exposure to cold. [Dkt. 13, p. 2]. Plaintiff does not relate that comment to the ALJ's decision or otherwise develop an argument related to it. The court notes a Disability Determination Service (DDS) reviewing physician expressed the opinion that Plaintiff

4

should avoid moderate exposure to cold due to Raynaud's which responds to medication. [R. 326, 350]. The court will not develop an argument for Plaintiff that is not expressed in the briefing. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (courts are not to create or to develop arguments for litigants that litigants do not develop themselves), *see also United States v. Rodriguiez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997)(appellants have the burden of tying the relevant facts to their legal contentions and must provide specific reference to the record to carry the burden of proving error). However the court notes that according to the Dictionary of Occupational Titles, exposure to weather, extreme cold and extreme heat are activities or conditions that do not exist for the occupation numbers identified by the vocational expert in response to hypothetical questioning. DICOT 713.687-018, 1991 WL 679271 (G.P.O.), DICOT 726.685-066, 1991 WL 679631 (G.P.O.).

Plaintiff asserts that the Commissioner: is "perpetrating a fraud on Claimant and the rest of the public" and "interfering with Claimant's rights to due process." Plaintiff claims she "was evaluated by a physical [consultative examiner] who was portrayed as an internal medicine specialist" when the physician is actually a family practice doctor. [R. 13, p. 3]. As a remedy, Plaintiff argues "an investigation must be launched and all individuals denied on the basis of an examination by the same physical [consultative examiner] should have their claims paid immediately." *Id*. In support of these extraordinary allegations and extraordinary remedy, Plaintiff refers to the consultative examination report completed by G. Bryant Boyd, MD on March 26, 2009. [R. 291-296].

The court finds that there is nothing within the consultative examination report that could remotely be construed as supporting Plaintiff's allegations and the inflammatory

5

language used to express them. Dr. Boyd is not "portrayed" as having any specialty whatsoever. The only "credentials" evident in the consultative examination report are the two letter designation "MD," which is commonly understood to signify that one has attained the degree of Doctor of Medicine. Dr. Boyd's report is titled: "Internal Medicine Examination," but that title speaks to the type of examination conducted, ie. internal medicine, as opposed to dental, opthalmic, orthopedic, etc., not the examiner's "credentials."

Step 5 Determination

Plaintiff argues that the ALJ erred in failing to include any limitation on reaching in the RFC due to elbow pain. According to Plaintiff, the ALJ's acknowledgment of epicondylitis[2] (inflamation of the elbow) at step two requires a limitation on reaching because "[i]t is axiomatic that in order to reach, one must bend one's elbow." [Dkt. 13, p. 4]. Many of the references to the medical record identified in Plaintiff's brief which pertain to Plaintiff's elbow contain observations that the elbow range of motion is intact, the other references listed by Plaintiff contain only Plaintiff's complaints of pain, but no findings of limitation. [R. 360-362, 392, 415, 420, 440, 442, 451]. The ALJ noted Plaintiff's complaint that she has pain in her elbows and that she does not take any medication for it, [R. 16], noted her activities, and that her treating physicians did not place functional restrictions on her. [R. 17]. The court finds that the ALJ adequately analyzed Plaintiff's elbow condition and that the record supports the absence of any elbow-related limitation aside from the ten pound lifting restriction.

---

[2] Epicondylitis is referred to in the record as "little league elbow." [R. 442].

Plaintiff also asserts that remand is required because "[t]here are no mental limitations whatsoever in the ALJ's hypothetical to the [vocational expert]." [Dkt. 13, p. 4]. That statement is inaccurate. The hypothetical contained the mental limitation of doing only "simple repetitive tasks," [R. 47], and another mental limitation on having public contact that was specifically described as:

> the kind of contact that a maid who cleaned motel rooms would have or for example where a maid would bump into people staying in the hotel, but not have to deal with them on a regular basis.

[R. 47-48]. There is, therefore, no merit to this assertion.

According to Plaintiff the ALJ erred because in performing the psychiatric review technique (PRT) the ALJ found Plaintiff had moderate limitations in three functional areas but did not include those limitations in the hypothetical question posed to the vocational expert. This argument evinces a misunderstanding of both the evaluative process for mental impairments and the record in this case.

When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations. The procedure is known as the psychiatric review technique (PRT). 20 C.F.R. §§ 404.1520a(e), 416.920a(e), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) (same). The procedure for evaluating alleged mental impairments requires the ALJ to consider the effect of the mental impairment on four broad areas of functioning: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation

of extended duration. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00 (C). However, as the ALJ noted in his decision, these criteria are not an RFC assessment, rather they rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. [R. 14]. The ALJ stated that the RFC assessment reflects the degree of limitation found in the mental function analysis. [R. 15].

With regard to the RFC assessment, the ALJ noted that, although Plaintiff alleges depression, she takes no medication for it, has never sought treatment from a mental health professional, and stopped taking Prozac in May, 2008. [R. 17]. The ALJ also noted that two medical experts with the state agency determined that Plaintiff could perform simple tasks with limited contact with the general public. [R. 17, 322-324, 349]. The court finds that the ALJ applied the correct standards in evaluating Plaintiff's mental impairment and that his RFC determination is supported by substantial evidence.

## Credibility Analysis

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir.2005) (citation, brackets, and internal quotation marks omitted). The ALJ cited numerous grounds, tied to the evidence, for the credibility finding, including: the lack of objective findings for some of Plaintiff's complaints; the examining physician's opinion that Plaintiff put forth poor effort on testing; the lack of need for medication for some of Plaintiff's claimed impairments; and the extent of Plaintiff's daily activities. The ALJ thus properly linked his credibility finding to the record, therefore the undersigned finds

no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## Conclusion

The court finds that the ALJ applied the correct standards in the evaluation of Plaintiff's claim and that the denial decision is supported by substantial evidence in the record. The denial decision is therefore AFFIRMED.

SO ORDERED this 4th day of September, 2012.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE